IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Theodore R. Banks, | Case No. 3:13 CV 2454 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| American Heritage Life Insurance Co., | |
| Defendant. | |

### INTRODUCTION

Plaintiff Theodore Banks purchased a disability insurance policy from Defendant American Heritage Life Insurance Company ("AHL"). He filed this action for breach of contract and bad faith when AHL denied his claim for disability benefits. Pending before this Court is AHL's Motion for Summary Judgment (Docs. 23–24), Banks' Opposition (Doc. 31), and AHL's Reply (Doc. 32).

### BACKGROUND

AHL issued Banks a disability insurance policy (the "Policy") in September 2004 when Banks was 42 years old (Doc. 25-1 at 4–15). Banks paid a monthly premium of $130. The Policy provided that in the event Banks became totally disabled, AHL would pay benefits for a maximum of five years (*id.* at 6). The Policy divided the five years into two periods: a two-year "own occupation" period, followed by a three-year "any occupation" period (*id.* at 7–8). Thus, during the first two years of disability, the Policy defined total disability to mean that: "due to injury or sickness, you are: (A) under the regular care and attendance of a physician; and (B) unable to perform the substantial and

material duties of your own occupation" (*id.* at 8). During the subsequent three years, the Policy defined total disability to mean that "due to injury or sickness, you are: (A) under the regular care and attendance of a physician; and (B) unable to perform the substantial and material duties of any occupation" (*id.*). The Policy further provides that "[w]ritten proof of loss must be furnished to [AHL] within 90 days after each loss begins" (*id.* at 12).

Banks was a self-employed cross-country truck driver. In July 2010, Banks was hospitalized after his blood sugar spiked uncontrollably and he suffered kidney damage as a result (*see* Doc. 31-6 at 28–29). At that time, doctors diagnosed Banks with diabetes, and Banks testifies that, although he takes insulin shots, he has had difficulties controlling his blood sugar ever since (*see id.* at 3). Banks now uses an insulin pump to control his blood sugar (Doc. 31-5, Banks Aff. ¶ 2). Banks also suffers from fluctuating vision problems related to his diabetes (Doc. 31-6 at 6) ("My vision change [sic] all the time. Today I might be able to make out something, tomorrow I might not."). He says that no doctor will prescribe him corrective lenses until his blood sugar is controlled (*id.*). He further testifies that because he is an insulin-dependent diabetic, he believes regulations preclude him from serving as an interstate truck driver and that companies would be reluctant to hire him as an intrastate driver because of his condition (*id.* at 6–9, 11–12).

Banks filed a Claim (Doc. 25-1 at 20–23) under the Policy in September 2010, claiming disability because of his diabetes. AHL paid Banks benefits under the Policy from September 2010 until July 2011 (Doc. 25-1 at 24–25). AHL sent letters to Banks requesting additional evidence of Banks' disability ("proof of loss") beginning in June 2011 (Doc. 25-1 at 26–29). Specifically, the letters requested Banks provide the following information:

- Complete the enclosed Training, Education & Experience Form and the Statement of Physical Limitations/Restrictions form. Have your attending Physician complete the Functional Capacity Form.

- Provide a copy of your business license.

- Are you the sole owner of the business? If yes, how long?

- What is the status of your business?

- Provide your job duties/responsibilities at your business[.]

- Who's performing your job duties in your absence?

- Are you responsible for managing the 3 employees?

- Provide complete copies of your personal and business income tax returns and attachments for 2009 and 2010 (Doc. 25-1 at 28).

Despite repeated written requests from AHL, Banks failed to provide the additional information through November 2011 (Doc. 25-1 at 36).

AHL conducted its own investigation of Banks' claimed disability. It surveilled Banks during June 28–30, 2011 at his home in Toledo (Doc. 25-1 at 47–57). At that time, AHL's investigator observed Banks driving a Chevy Silverado, sometimes with passengers, and moving with ease around the exterior of his home (*id.*). AHL further learned Banks renewed his CDL in September 2011 with the Ohio Bureau of Motor Vehicles, which required him to pass a vision test and certify that he was physically able to drive a motor vehicle (Doc. 25-1 at 46). AHL again surveilled Banks in Toledo during March 16–17, 2012 in connection with his recently deceased father's memorial services (Doc. 25-1 at 58–67). Banks was observed driving the Silverado on local roads and freeways, and on one occasion using a cell phone while driving (*id.*).

After being contacted by AHL with the results of its surveillance investigation, Banks' optometrist, Dr. Jeffrey Schmakel, concluded that Banks did not suffer from the severe vision condition that he claimed, and further found that Banks was malingering during a prior examination (Doc. 25-1 at 70–71). In a July 2012 letter to AHL, Dr. Schmakel stated:

> I have never before in fifty years been lied to by a patient, let alone by his mother due to an interest in defrauding the disability system. I apologize for not sensing [Banks'] apparently healthy ocular status flew in the face of his claimed "diabetic visual loss" requiring one or two people to assist him in walking and his inability to drive a car ever again. Thanks to your investigation he obviously drives and walks without assistance, sees fine centrally and peripherally, unlike during subjective vision testing. Again, thank you for your research and investigation. I apologize for being scammed by the patient and his family. I rescind, take back, revoke the statement of his vision dated November 1, 2011 that he cannot drive and needs disability monies accordingly. (Doc. 25-1 at 71).

Dr. Schmakel confirmed this opinion at deposition (Doc. 25-2, Schmakel Dep. at 51–52).

AHL concluded Banks was not entitled to further benefits and terminated his benefits starting August 1, 2011 (Doc. 25-1 at 76). Banks then filed suit against AHL for breach of contract and bad faith.

### STANDARD OF REVIEW

Pursuant to Federal Civil Rule 56(a), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When considering a motion for summary judgment, the court must draw all inferences from the record in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

**DISCUSSION**

**Breach of Contract**

An insurance policy is a contract between the insurer and the insured. *Etter v. Am. Family Life Ins. Co.*, 2009-Ohio-1120, ¶ 8 (Ohio Ct. App. 2009). When contract provisions are "reasonably susceptible of more than one interpretation, they must be construed strictly against the insurer and liberally in favor of the insured." *Id.* "[T]he word 'breach,' as applied to the law of contracts, is 'defined as a failure without legal excuse to perform any promise which forms a whole or part of a contract.'" *Offill v. Penn. Life Ins. Co.*, 243 F.R.D. 276, 281 (S.D. Ohio 2007) (quoting *Nat'l City Bank v. Erskine & Sons, Inc.*, 158 Ohio St. 450, syl. ¶ 1 (1953)). Banks claims AHL breached the Policy because he meets the definition of total disability. According to Banks, he is precluded from working as a truck driver because he is an insulin-dependent diabetic and has intermittent poor vision. No medical professional or occupational expert has offered such an opinion.

The Policy required Banks to submit evidence of proof of loss to AHL at its request (Doc. 25-1 at 13). Despite AHL's repeated requests that Banks provide proof of loss documentation, Banks failed to do so in a timely fashion as required by the Policy, and Banks' failure to comply with the terms of the contract is reason alone to grant summary judgment. *See Chong v. Am. Family Ins. Co.*, 2005-Ohio-5022, ¶ 33 (Ohio Ct. App. 2005) ("Generally, an insured's failure to submit a [] proof of loss statement as required by a policy of insurance precludes payment of a claimed loss."); *see also Korn v. Paul Revere Life Ins.*, 382 F. App'x 443, 448 (6th Cir. 2010) (finding insured failed to comply with proof of loss requirement in disability policy where plaintiff "failed to provide Paul Revere with information pertaining to his court appearances during the twelve months preceding his disability and his business and personal tax returns for 1998 and 1999, even though Paul Revere repeatedly requested this information").

In addition, beyond his own self-serving testimony, Banks has not provided supporting evidence of his contention that he is disabled, either by way of a physician or other expert opinion. He submits extensive medical records concerning his diabetes, but the fact he continues to suffer from diabetes does not create an issue of fact as to whether he is disabled. *Cf. Steele v. Oasis Turf & Tree, Inc.*, 2012 WL 3028514, at *5 (S.D. Ohio 2012) (finding employer in disability discrimination case entitled to summary judgment where plaintiff had diabetes but presented no evidence it was disabling). The only medical professional who offers an opinion is his own treating doctor, Dr. Schmakel, who finds that Banks is not disabled. Banks fails to put forward sufficient evidence from which a jury could find in his favor on his breach of contract claim.

**Bad Faith**

"[I]t is well-established in Ohio that an insurer must 'act in good faith in the processing and payment of the claims of its insured.'" *LoCoco v. Med. Sav. Ins. Co.*, 530 F.3d 442, 450 (6th Cir. 2008) (quoting *Staff Builders, Inc. v. Armstrong*, 37 Ohio St. 3d 298, 302 (1988)). "In determining whether an insurer acted with the requisite good faith, a reviewing court must examine whether the insurer had reasonable justification for taking the challenged action." *Id.* Where "reasonable grounds" exist for an insurer to question whether a claimant is totally disabled, a bad faith claim cannot withstand summary judgment. *Sabatine v. Paul Revere Life Ins. Co.*, 2011 WL 127487, at *3 (N.D. Ohio 2011).

Beyond the claim denial, Banks does not concisely articulate what AHL activities form the basis for his bad faith claim (*see generally* Doc. 1-2 (Complaint) and Doc. 31). He appears to argue that AHL acted in bad faith because its claims assessor, Iris Butler, testified that she did not know Banks had diabetes at the time she denied the claim (Doc. 31 at 8). Nor was she aware of the effect that being insulin-dependent had on his ability to drive in interstate trucking (*id.*).

6

AHL had "reasonable grounds" to question Banks' disability claim. He failed to timely supply proof of loss documentation after repeated requests and was observed driving and going about his daily life with ease. Further, to the extent Butler was unaware of the exact nature and potential consequences of Banks' claimed conditions, such ignorance is properly attributable to Banks and his failure to submit information repeatedly requested by AHL. Banks fails to cite evidence to support a bad faith claim.

## CONCLUSION

Banks, despite numerous opportunities both before and after this lawsuit was filed, has failed to put forward evidence creating a genuine issue of material fact with respect to either claim. The Motion for Summary Judgment (Docs. 23–24) is granted, and this case is dismissed with prejudice.

IT IS SO ORDERED.

                                           s/ *Jack Zouhary*
                                           JACK ZOUHARY
                                           U. S. DISTRICT JUDGE

January 15, 2015